FILED

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

JUN 2 6 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

**MARK ORTEGA,** individually and on
behalf of all others similarly situated,

        *Plaintiff,*

v.

**KELLER WILLIAMS REALTY, INC.**
**and KWWD, LLC**

        *Defendants,*

Case No. 5:24-cv-332-XR

**DEMAND FOR JURY TRIAL**

---

## FIRST AMENDED CLASS ACTION COMPLAINT

    Plaintiff, Mark Ortega ("Plaintiff" or "Ortega") on behalf of himself and all others similarly situated, through his undersigned attorney, submits his Complaint against Defendant Keller Williams Realty, Inc. ("Keller Williams") and Defendant KWWD, LLC ("KW Woodlands") (collectively as "Defendants") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff is an individual and resident of San Antonio, Texas.

2.      Keller Williams is a company with is headquarters and principal place of business in Austin, Texas. Keller Williams conducts business throughout this District and throughout the US, including Texas.

3.      KW Woodlands is a Texas limited liability company with its principal place of business in The Woodlands, Texas. KW Woodlands operates as a franchisee of Keller Williams.

## JURISDICTION AND VENUE

4.      <u>Jurisdiction.</u> This Court has federal question subject matter jurisdiction over this action under 28 U.S.C §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court also has supplemental jurisdiction because the Texas Telephone Solicitation Act ("TTSA") claim relates to the same telemarketing campaign as the TCPA.

5.      <u>Personal Jurisdiction.</u> This Court has personal jurisdiction over the Defendants because the Defendants conduct business in this District and place calls to consumers into this District.

6.      <u>Venue.</u> Venue is proper in this District under 28 U.S.C § 1391(b) because the Plaintiff resides in this District and the wrongful conduct giving rise to this case was directed into this District.

## INTRODUCTION

7.      In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

8.      Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

9.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R § 64.1200(c)(2).

10.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

11.    The TCPA prohibits the initiation of the telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

12.    Plaintiff is an individual who was in Texas at the time of the messages.

13.    Plaintiff is, and has been at all times material to this action, the regular and sole user of his cellular telephone number, which is (210) 744-XXXX.

14.    At all times material to this action, Plaintiff uses the cell phone with area code (210) and digits beginning with digits 744 primarily for residential purposes.

15.    Plaintiff registered his cellular telephone number with the National Do No Call Registry on or about January 23, 2012.

16.    Plaintiff registered his number to avoid receiving unwanted telemarketing and solicitation calls.

17.    Plaintiff never provided Defendants with his express consent to be contacted.

18.    Plaintiff has no existing business relationship with Defendants.

19.    Even though Plaintiff registered his cell phone number on the DNC, and despite the fact that Plaintiff did not consent to Defendants' solicitation calls, KW Woodlands, by and through

3

its agent, Julia Puig Jordan ("Julia Jordan"), acting as an apparent agent of Defendant Keller Williams, sent Plaintiff at least two telemarketing messages.

20.    On or around March 4, 2024, at 5:38 pm CT, Plaintiff received two distinct and separate telemarketing messages to his cell phone number from Julia Jordan, an agent of KW Woodlands operating under the Keller Williams brand, using telephone number 832-444-4923.The text message is shown below:



21.    KW Woodlands' messages did not include any sort of opt-out instructions.

22.    Plaintiff messaged Jordan and told her to "stop."

23.    KW Woodlands' text messages were sent as part of a marketing campaign to promote an open house for a residential property.

24.    KW Woodlands routinely holds open houses and uses similar marketing tactics to generate leads for real estate transactions from which it and Keller Williams financially benefit.

25.     According to har.com, a real estate website, 832-444-4923 is associated with Julia Jordan, an agent of KW Woodlands operating under the Keller Williams brand.[1]

26.     KW Woodlands' use of the Keller Williams brand, logos, and marketing materials, as directed by Keller Williams, created a reasonable belief in Plaintiff that the telemarketing messages were sent by or on behalf of Keller Williams.

27.     At all times material to this Complaint, Julia Jordan held herself out as an agent that sells real estate for Defendants' benefit.

28.     Keller Williams's website has an option where a user of the website can "Find an Agent."

29.     Julia Jordan's name appears on Keller Williams's website as a Keller Williams "luxury agent" who serves the state of Texas.

30.     Upon clicking Julia Jordan's name on Keller Williams's website, Julia Jordan's contact information appears. Below the contact information, it states: "Keller Williams Realty The Woodlands & Magnolia."

31.     Keller Williams's website also includes an icon directly under Julia Jordan's picture that a user can click stating, "Connect with Me."

32.     Julia Jordan's Facebook and YouTube accounts prominently display: "Keller Williams Luxury."

33.     On information and belief, both Defendants have financially benefitted from the telemarketing calls at issue in this Complaint. KW Woodlands obtained commissions from real estate transactions generated through its marketing activities, including those using telemarketing.

---

[1] *See* Julia Jordan, HAR.com, https://www.har.com/julia-puig-jordan/agent_jpjordan (last visited June 14, 2024).

Keller Williams benefitted financially from KW Woodlands' by receiving royalty fees, as outlined in the Keller Williams Policies & Guidelines Manual.

34.     On March 5, 2024, Plaintiff's attorney sent a letter to KW Woodlands stating that Plaintiff is registered in the National Do Not Call Registry, did not consent to receiving communications from Defendants, and demanding damages. The email was answered by KW Woodlands' attorneys on March 20, 2024. Defendants denied the demand.

35.     On information and belief, Defendants have engaged in a pattern and practice of sending telemarketing messages to consumers without proper consent, including to those whose numbers are listed on the National Do Not Call Registry. Plaintiff's experience, as detailed herein, is not an isolated incident, but rather illustrative of Defendants' systemic disregard for consumer privacy and the TCPA.

36.     The unauthorized solicitations that Plaintiff received from or on behalf of Defendants have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

37.     As a result of Defendants' unlawful conduct, Plaintiff seeks both injunctive and monetary relief.  Specifically, Plaintiff seeks to enjoin KW Woodlands from further violating the TCPA by directly contacting consumers without proper consent. Plaintiff also seeks to hold Keller Williams vicariously liable for the TCPA violations committed by KW Woodlands, its agent, due to Keller Williams' control over KW Woodlands' branding, marketing practices, and its financial interest in the outcomes of those practices.  Plaintiff, on behalf of himself and the proposed Classes, further seeks an award of statutory damages and costs.

## **Direct and Vicarious Liability**

38.     On May 9, 2013, the FCC held within a Declaratory Ruling that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, … suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

39.     Additionally, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. at 6587 n. 107.

40.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

41.     Keller Williams and its franchisees, including KW Woodlands, utilize telemarketing as part of their business operations to promote their services and solicit new clients.

42.    KW Woodlands, operating under the Keller Williams brand, represents itself to the public as a Keller Williams entity, using Keller Williams' logos, marketing materials, and systems to sell real estate for the benefit of itself and Keller Williams.

43.    Keller William's website (https://www.kw.com) features a "Find a local KW office" option, allowing users to locate nearby Keller Williams offices, including franchisee locations such as KW Woodlands.

44.    Users searching for "The Woodlands & Magnolia" on the Keller Williams website are directed to KW Woodlands' specific webpage, which prominently displays the Keller Williams logo and branding.[2]

45.    KW Woodlands' social media presence, including its Facebook, Instagram, and YouTube accounts, prominently feature the Keller Williams logo and branding, reinforcing its public image as a Keller Williams entity.

46.    Keller Williams exercises strict control over its franchisees' branding and marketing practices, including KW Woodlands'.  As detailed in the Keller Williams Policies & Guidelines Manual, Keller Williams mandates the use of its name, logos, and approved marketing materials by its franchisees, ensuring brand uniformity across all operations. This control extends to advertising, signage, and even business cards, reinforcing a consistent and cohesive brand image that ties franchisees directly to Keller Williams.

47.    Keller Williams financially benefits from the sales activities of its franchisees, including KW Woodlands. The Keller Williams Policies & Guidelines Manual details a royalty fee structure that requires franchisees to pay a percentage of their Gross Commission Income to Keller Williams.  This royalty fee structure demonstrates that Keller Williams has a direct financial stake

---

[2] *See* KW Woodlands, Keller Williams, https://locations.kw.com/?s=the+woodlands+%26+magnolia (last visited June 14, 2024)

in the success of its franchisees' real estate operations, including any telemarketing activities that lead to closed transactions.

48.     Julia Jordan acted with the apparent authority of Keller Williams. This apparent authority stemmed from KW Woodlands' use of Keller Williams' branding and marketing materials, as authorized and controlled by Keller Williams. A reasonable consumer, like Plaintiff, would have believed that Julia Jordan was acting on behalf of Keller Williams when she sent the telemarketing messages at issue.

49.     KW Woodlands is directly liable for the TCPA violations at issue because it initiated the unsolicited telemarketing messages to Plaintiff. Keller Williams is vicariously liable for those violations due to its control over KW Woodlands, its knowledge and approval of the messages, and the apparent authority created by KW Woodlands' use of the Keller Williams brand.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure § 23(b)(2) and 23(b)(3).

51.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**National Do Not Call Registry Class:** All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint through the date of trial.

**Texas Telephone Solicitation Act Do Not Call Registry Class:** All persons in the United States (1) who received a telephonic sales call regarding Defendants' goods and/or services (2) to a number listed on the Texas No-Call list (3) at any time in the period that begins two years before the date of filing this Complaint through the date of trial.

52.    Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

53.    Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

54.    This Class Action Complaint seeks injunctive relief and money damages.

55.    The Class as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

56.    Plaintiff does not know the exact number of members in the Class but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the type of calls made.

57.    The joinder of all Class members is impracticable due to the size of the Class and relatively modest value of each individual claim.

58.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

59.    There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

      (a) Whether Defendants made calls to Plaintiff and members of the Class that were registered on the National Do Not Call Registry;

      (b) Whether Defendants' conduct constitutes a violation of the TCPA;

      (c) Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

(d) Whether Defendant Keller Williams is vicariously liable for calls placed by KW Woodlands.

60.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests which are antagonistic to any member of the Class.

61.    Plaintiff has retained competent counsel. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class.

62.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

63.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute and individual case.

**FIRST CAUSE OF ACTION**
**Violation of the 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Registry Class)**

64.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 63 of this Complaint and incorporates them by reference herein.

65.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227, by making calls to Plaintiff and members of the Class who are registered in the National Do Not Call Registry.

66.    The statute provides a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5).

67.    Additionally, the Fifth Circuit held that a single text message can constitute a concrete injury sufficient to confer Article III standing. *See Cranor v. 5 Star Nutrition*, L.L.C., 998 F.3d

11

686, 690 (5th Cir. 2021) (concluding that a single text message is a nuisance and an invasion of privacy and that this type of nuisance is the kind of injury that the TCPA was specifically enacted to curb).

68.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers on the National Do Not Call Registry.

69.     If Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

70.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls to any cellular telephone numbers registered in the National Do Not Call Registry.

### SECOND CAUSE OF ACTION
**Violation of Tex. Bus. & Com. Code Ann. § 305**
**(On Behalf of Plaintiff and the Texas Telephone Solicitation**
**Act National Do Not Call Registry Class)**

71.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 63 of this Complaint and incorporates them by reference herein.

72.     The TTSA states that "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication". *See* Tex. Bus. & Com. Code Ann. § 305.053.

73.     In violation of the TTSA, Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's made and/or knowingly allowed telephonic

communications to Plaintiff and the Class members without Plaintiff's and the Class members' prior express consent even though the Class members were on the National Do Not Call Registry.

74.     As a result of Defendants' conduct as alleged herein, and pursuant to § 305.053(b) of the TTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *See id.*

75.     To the extent Defendants' misconduct is determined to be willful and knowing the Court should, pursuant to section 305.053(c) treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) Injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants behalf from calling telephone numbers on the National Do Not Call Registry advertising their goods or services in the future;

b) An award to Plaintiff and the Classes of damages, as allowed by law; and

c) An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

d)     Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**MARK ORTEGA**, individually and on behalf of all others similarly situated,

DATED this 26th day of April 2024.

By:

**ALMANZA TERRAZAS PLLC**
13423 Blanco Rd, PMB 8098
San Antonio, Texas 78216
Telephone: 512-900-9248
Email: paulina@almanza.legal

/s/ **Paulina Almanza**
Paulina Almanza
State Bar No. 24109580
Attorney for Plaintiff Mark Ortega

## CERTIFICATE OF SERVICE

I certify that on June 26, 2024, a copy of this document was served on Counsel for

Defendant Keller Williams via email:

Ross S. Elliot: ross@rogersmoorelaw.com
Stephan Bruce Rogers: steve@rogersmoorelaw.com
Kelly Puntey Rogers: kelly@retexlaw.com

/s/*Paulina Almanza*
Paulina Almanza