IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MARK ANTHONY ORTEGA** *Plaintiff,* v. **KELLER WILLIAMS REALTY, INC.** **and KWWD, LLC,** **and ILMC LLC,** **and KAMERYN ERIKA CORTEZ** *Defendants,* | Case No. SA-24-CV-00332-XR **DEMAND FOR JURY TRIAL** |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Mark Anthony Ortega ("Plaintiff" or "Ortega"), submits his Complaint against Defendants Keller Williams Realty, Inc. ("Keller Williams"), KWWD, LLC ("KW Woodlands"), ILMC, LLC ("ILMC"), and KAMERYN ERIKA CORTEZ ("Kamern Cortez")(collectively as "Defendants") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") and Texas Telephone Solicitation Act ("TTSA") by making telemarketing calls to Plaintiff without consent including to Plaintiff's phone number that is registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

### PARTIES

1. Plaintiff is an individual and resident of San Antonio, Texas.

1

2. Keller Williams is a company with is headquarters and principal place of business in Austin, Texas. Keller Williams conducts business throughout this District and throughout the US, including Texas.

3. KW Woodlands is a Texas limited liability company with its principal place of business in The Woodlands, Texas. KW Woodlands operates as a franchisee of Keller Williams.

4. ILMC, LLC is a Texas Limited Liability Company with its principal place of business in Houston, Texas. ILMC operates as a franchisee of Keller Williams.

5. Kameryn Erika Cortez is an individual and resident of Houston, Texas.

## JURISDICTION AND VENUE

6. <u>Jurisdiction.</u> This Court has federal question subject matter jurisdiction over this action under 28 U.S.C §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court also has supplemental jurisdiction because the Texas Telephone Solicitation Act ("TTSA") under 28 U.S.C. § 1367 because the TTSA claim relates to the same telemarketing campaign as the TCPA claim, forming part of the same case or controversy.

7. <u>Personal Jurisdiction.</u> This Court has personal jurisdiction over the Defendants because the Defendants conduct business in this District and place calls to consumers into this District.

8. <u>Venue.</u> Venue is proper in this District under 28 U.S.C § 1391(b) because the Plaintiff resides in this District and the wrongful conduct giving rise to this case was directed into this District.

## INTRODUCTION

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R § 64.1200(c)(2).

12. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA prohibits the initiation of the telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5).

**FACTUAL ALLEGATIONS**

14. Plaintiff is an individual who was in Texas at the time of the messages.

15. Plaintiff is, and has been at all times material to this action, the regular and sole user of his cellular telephone number, which is (210) 744-XXXX.

16. At all times material to this action, Plaintiff uses the cell phone with area code (210) and digits beginning with digits 744 primarily for residential purposes.

17. Plaintiff registered his cellular telephone number with the National Do No Call Registry on or about January 23, 2012.

18. Plaintiff registered his number to avoid receiving unwanted telemarketing and solicitation calls.

19. Plaintiff never provided Defendants with his express consent to be contacted.

20. Plaintiff has no existing business relationship with Defendants.

21. Even though Plaintiff registered his cell phone number on the DNC, and despite the fact that Plaintiff did not consent to Defendants' solicitation calls, KW Woodlands, by and through its agent, Julia Puig Jordan ("Julia Jordan"), acting as an apparent agent of Defendant Keller Williams, sent Plaintiff at least two telemarketing messages.

22. On or around March 4, 2024, at 5:38 pm CT, Plaintiff received two distinct and separate telemarketing messages to his cell phone number from Julia Jordan, an agent of KW Woodlands operating under the Keller Williams brand, using telephone number 832-444-4923. The text message is shown below:



23. KW Woodlands' messages did not include any sort of opt-out instructions.

24. Plaintiff messaged Jordan and told her to "stop."

25. KW Woodlands' text messages were sent as part of a marketing campaign to promote an open house for a residential property.

26. KW Woodlands routinely holds open houses and uses similar marketing tactics to generate leads for real estate transactions from which it and Keller Williams financially benefit.

27. According to har.com, a real estate website, 832-444-4923 is associated with Julia Jordan, an agent of KW Woodlands operating under the Keller Williams brand.[1]

28. KW Woodlands' use of the Keller Williams brand, logos, and marketing materials, as directed by Keller Williams, created a reasonable belief in Plaintiff that the telemarketing messages were sent by or on behalf of Keller Williams. Plaintiff, as a consumer, had no way of knowing that KW Woodlands operated as a separate franchisee and relied on the appearance of Keller Williams' branding in the text messages.

29. At all times material to this Complaint, the agent, Julia Jordan held herself out as an agent that sells real estate for Defendants' benefit.

30. Keller Williams's website has an option where a user of the website can "Find an Agent."

31. Julia Jordan's name appears on Keller Williams's website as a Keller Williams "luxury agent" who serves the state of Texas.

32. Upon clicking Julia Jordan's name on Keller Williams's website, Julia Jordan's contact information appears. Below the contact information states, "Keller Williams Realty The Woodlands & Magnolia."

33. Keller Williams's website also includes an icon directly under Julia Jordan's picture that a user can click stating, "Connect with Me."

34. Julia Jordan's Facebook and YouTube accounts prominently display: "Keller Williams Luxury."

---

[1] *See* Julia Jordan, HAR.com, https://www.har.com/julia-puig-jordan/agent_jpjordan (last visited June 14, 2024).

35. On March 5, 2024, Plaintiff's then attorney, Paulina Almanza, sent a letter to KW Woodlands stating that Plaintiff is registered in the National Do Not Call Registry, did not consent to receiving communications from Defendants, and demanding damages. The email was answered by KW Woodlands' attorneys on March 20, 2024. Defendants denied the demand.

36. On or around April 25, 2024 at 9:04pm CT, Plaintiff received an additional call from 832-444-4923 which is associated with Julia Jordan of KWWD, LLC. The call was unanswered given it was placed late at night.

37. On or around July 16, 2024, at 11:19 AM CT, Plaintiff received another unsolicited telemarketing call from a different Keller Williams office, Keller Williams Metropolitan which is operated by Defendant ILMC, LLC. The call was from 832-350-8275 and caller identified herself as "a realtor with Keller Williams here in Houston" as well as her name was Kameryn Cortez.

38. When Plaintiff requested information about why he was contacted, the caller stated "to be honest, I have a dialer, it'll find sometimes the list will be old and it'll find it on Zillow… The dialer will look on Zillow for any for sale by owner that are selling on their own and then it gives me the list of phone numbers…".

39. Defendant ILMC, LLC's use of the Keller Williams brand, logos, and marketing materials, as directed by Keller Williams, created a reasonable belief in Plaintiff that the telemarketing messages were sent by or on behalf of Keller Williams. Plaintiff, as a consumer, had no way of knowing that ILMC, LLC operated as a separate franchisee and relied on the appearance of Keller Williams' branding in the kwmet.com website and representations of Defendant Kameryn Cortez as being from Keller Williams.

40. On information and belief, the Defendants have financially benefitted from the telemarketing calls at issue in this Complaint. ILMC and KW Woodlands obtained commissions

from real estate transactions generated through its marketing activities, including those using telemarketing. Keller Williams benefitted financially from IMLC and KW Woodlands by receiving royalty fees, as outlined in the Keller Williams Policies & Guidelines Manual.

41. On information and belief, Defendants have engaged in a pattern and practice of sending telemarketing messages to Plaintiff without his proper consent, including to his phone number that is listed on the National Do Not Call Registry. Plaintiff's experience, as detailed herein, is not an isolated incident, but rather illustrative of Defendants' systemic disregard for consumer privacy, the TCPA, and TTSA.

42. The unauthorized solicitations that Plaintiff received from or no behalf of Defendants have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

43. As a result of Defendants' unlawful conduct, Plaintiff seeks both injunctive and monetary relief. Specifically, Plaintiff seeks to enjoin KW Woodlands, ILMC, and their agents, from further violating the TCPA by directly contacting Plaintiff without proper consent. Plaintiff also seeks to hold Keller Williams vicariously liable for the TCPA violations committed by its agents, KW Woodlands and ILMC, due to Keller Williams' control over their branding, marketing practices, and its financial interest in the outcomes of those practices. Plaintiff further seeks an award of statutory damages and costs.

## **Direct and Vicarious Liability**

44. On May 9, 2013, the FCC held within a Declaratory Ruling that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment

> proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, … suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

45. Additionally, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. at 6587 n. 107.

46. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

47. Keller Williams and its franchisees, including KW Woodlands and ILMC, utilize telemarketing as part of their business operations to promote their services and solicit new clients.

48. KW Woodlands and ILMC, operating under the Keller Williams brand, represented themselves to the public as a Keller Williams entity, using Keller Williams' logos, marketing materials, and systems to sell real estate for the benefit of itself and Keller Williams.

49. Keller William's website (https://www.kw.com) features a "Find a local KW office" option, allowing users to locate nearby Keller Williams offices, including franchisee locations such as KW Woodlands and ILMC.

50. Users searching for "The Woodlands & Magnolia" on the Keller Williams website are directed to KW Woodlands' specific webpage[2], which prominently displays the Keller Williams logo and branding. The same is true leading to ILMC's specific webpage by searching "Keller Williams Realty Metropolitan".

51. KW Woodlands' and ILMC's social media presence, including their Facebook, Instagram, and YouTube accounts, prominently feature the Keller Williams logo and branding, reinforcing their public image as a Keller Williams entity.

52. Keller Williams exercises strict control over its franchisees' branding and marketing practices, including KW Woodlands' and ILMC. As detailed in the Keller Williams Policies & Guidelines Manual, Keller Williams mandates the use of its name, logos, and approved marketing materials by its franchisees, ensuring brand uniformity across all operations. This control extends to advertising, signage, and even business cards, reinforcing a consistent and cohesive brand image that ties franchisees directly to Keller Williams.

53. Keller Williams financially benefits from the sales activities of its franchisees, including KW Woodlands and ILMC. The Keller Williams Policies & Guidelines Manual details a royalty fee structure that requires franchisees to pay a percentage of their Gross Commission Income to Keller Williams. This royalty fee structure demonstrates that Keller Williams has a direct financial stake in the success of its franchisees' real estate operations, including any telemarketing activities that lead to closed transactions.

54. Julia Jordan and Kameryn Cortez both acted with the apparent authority of Keller Williams. This apparent authority stemmed from KW Woodlands' and ILMC's use of Keller Williams' branding and marketing materials, as authorized and controlled by Keller Williams. A

---

[2] *See* KW Woodlands, Keller Williams, https://locations.kw.com/?s=the+woodlands+%26+magnolia (last visited June 14, 2024)

reasonable consumer, like Plaintiff, would have believed that Julia Jordan and Kameryn Cortez were acting on behalf of Keller Williams when they placed the telemarketing calls at issue.

55.     KW Woodlands, ILMC, and Kameryn Cortez are directly liable for the TCPA violations at issue because they initiated the unsolicited telemarketing calls and messages to Plaintiff. Keller Williams is vicariously liable for those violations due to its control over KW Woodlands and ILMC, its knowledge and approval of the telemarketing practices, and the apparent authority created by KW Woodlands' use of the Keller Williams brand.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. 227(c)(5))

56.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

57.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c)(2), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

59.     A text message to a cellular telephone constitutes a "call" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016). Furthermore, the Fifth Circuit has held that a single unsolicited text message can constitute a

concrete injury sufficient to confer Article III standing under the TCPA. *See Cranor v. 5 Star Nutrition*, L.L.C., 998 F.3d 686, 690 (5th Cir. 2021). In *Cranor*, the Court recognized that a single unsolicited text message can cause nuisance and invasion of privacy, harms that Congress sought to prevent by enacting the TCPA. See id. 688-90

60.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff who registered his respective telephone number on the National Do Not Call Registry.

61.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone solicitation in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R § 64.1200, as described above.

62.     As a result of Defendants' conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), and is entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

63.      To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

**SECOND CAUSE OF ACTION**
**Violation of Texas Telephone Solicitation Act**
**(Tex. Bus. & Com. Code Ann. § 305)**

64.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

65.     It is a violation of the TTSA to "make a telephone call or use an automatic dial announcing device to make a telephone call for the purpose of making a sale if: (1) the person making the call or using the device knows or should have known that the called number is a mobile telephone for which the called person will be charged for that specific call; and (2) the called

person has not consented to the making of such a call to the person calling or using the device or to the business enterprise for which the person is calling or using the device." *See* Tex. Bus. & Com. Code Ann. § 305.001.

66. The TTSA states that "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication". *See* Tex. Bus. & Com. Code Ann. § 305.053.

67. In violation of the TTSA, Defendants made and/or knowingly allowed telephonic communications to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent even though the Class members were on the National Do Not Call Registry.

68. As a result of Defendants' conduct as alleged herein, and pursuant to § 305.053(b) of the TTSA, Plaintiff was harmed and is entitled to a minimum of $500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future calls. *See id.*

69. To the extent Defendants' misconduct is determined to be willful and knowing the Court should, pursuant to section 305.053(c) treble the amount of statutory damages recoverable by Plaintiff.

**THIRD CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**Failure to Honor Do-Not-Call Request**
**(47 C.F.R. § 64.1200(d)(6))**

70. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

71. The TCPA and its accompanying regulations impose an affirmative obligation upon entities engaged in telemarketing to honor consumer requests to cease such solicitations. See 47 C.F.R. § 64.1200(d)(6).

72. Specifically, 47 C.F.R. § 64.1200(d)(6) requires a "person or entity making calls for telemarketing purposes" to "maintain a record of a consumer's request not to receive further telemarketing calls" and honor said request "for 5 years from the time the request is made."

73. On or around March 4, 2024, Plaintiff expressly instructed Julia Jordan of KW Woodlands, in writing, to cease all telemarketing communications, effectively creating a do-not-call request pursuant to 47 C.F.R. § 64.1200(d)(6).

74. Notwithstanding Plaintiff's clear and unequivocal request that Defendant KW Woodlands, and Keller Williams' agents stop calling, Defendant KW Woodlands chose to ignore Plaintiff's instructions and proceeded send additional solicitations to Plaintiff's Number.

75. As a result of Defendant KW Woodlands' failure to implement and maintain procedures reasonably calculated to honor Plaintiff's do-not-call request, and/or Defendant's intentional and knowing decision to disregard said request, Plaintiff is entitled to damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**ATDS or Pre-Recorded Message**
**(47 U.S.C. § 227(b)(1)(A)(iii))**

76. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

77. Defendants, including ILMC, LLC and Kameryn Cortez, violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system (ATDS) to place calls to Plaintiff's number without prior express consent.

78. The calls made to Plaintiff's number were initiated using an ATDS, as evidenced by the automated nature of the dialer system described by Defendant Kameryn Cortez. This system has the capacity of storing or producing telephone numbers to be called, using a random or sequential number generator, and to dial such numbers without human intervention.

79. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff is entitled to statutory damages of $500 per violation.

80. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a) Injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other person or entities acting on Defendants' behalf from calling Plaintiff advertising their goods or services.

b) An award to Plaintiff for damages, as allowed by law; and

c) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

                                        Respectfully Submitted,

                                        **MARK ANTHONY ORTEGA**

DATED this 7th day of January, 2025.

                                        By: */s/ Mark Anthony Ortega*
                                            Mark Anthony Ortega, Plaintiff

## CERTIFICATE OF SERVICE

I certify that on January 7, 2025, a copy of this document was served on Counsel for Defendant Keller Williams Realty, Inc. and Defendant KWWD, LLC via email:

Todd P. Stelter tstelter@hinshawlaw.com
C. Charles Townsend ctownsend@hinshawlaw.com
Alfredo Ramos framos@hinshawlaw.com
**Attorneys for Keller Williams Realty, Inc.**


Stephan Bruce Rogers: steve@rogersmoorelaw.com
Kelly Puntey Rogers: kelly@retexlaw.com
**Attorneys for KWWD, LLC.**

                                            */s/ Mark Anthony Ortega*
                                            Mark Anthony Ortega